Good morning, Your Honors, and may it please the Court, Alexandra Yates, on behalf of Mr. Wallenstein, who is challenging his conviction for making criminal threats against presidential candidates after Mr. Wallenstein called the FBI to self-report his own disturbing thoughts and ask for help. Your Honors, we've raised some overlapping issues that all circle around and relate to the lack of proof and some instructional problems regarding Mr. Wallenstein's intent. I'd like to focus my initial comments this morning on what I think is the clearest lens through which the Court might view those errors, and that's willfulness. Your Honors, under the plain text of the governing statute and the Supreme Court's decision in 2012, Wallenstein didn't act willfully. If he didn't have a bad or unlawful purpose in making his statements, then he could not be convicted. He should have been acquitted. Now, at trial, the government offered no evidence at all of a bad purpose. Instead, what the government told the jurors was, even if Mr. Wallenstein's purpose was to get help, even if he was trying to do the right thing, that didn't matter. That was, in the government's words, not relevant. Similarly, the instructions said nothing about a bad or unlawful purpose, nothing about willfulness. So this says, second defendant intended that the statement be understood as a threat. Yes, Your Honor. I'm just reading from the jury instructions. That's right, Your Honor. And so it's that instruction coupled, so that's instructions 13 or 14, depending on the count. And so then we have to look to instruction 15, which defines threat. And what that says is that a threat is a serious expression of an intent to injure or kill another person. So that's not sufficient in your view? No, not on the facts of this particular case, and here's why. So taking that together, what the jurors were told is they could convict Mr. Wallenstein if he made a statement that he intended to be understood as a serious expression of an intent to harm somebody else. But of course, Mr. Wallenstein's entire defense in this case was that he was expressing an intent to harm, not for some bad or unlawful purpose, not because he was trying to threaten anyone, but because he needed to explain why he was calling for help. The jury could disbelieve that. There was other evidence in the record. So they got the instruction, but they didn't believe that theory. Well, respectfully, Your Honor, I would disagree that there was sufficient evidence for a jury to believe that beyond reasonable doubt. But even if they could... But counsel, he said, I am concerning that I am going to attempt an assassination of Donald Trump and Hillary Clinton. I'm very serious this will be attempted. I understand that you presented your theory of the case to the jury, but I don't understand why the jury, why we shouldn't credit the jury's finding that there was sufficient evidence that this was a true threat. Thank you, Your Honor. To answer both questions, first, that statement, of course, has to be read in context. And so to continue with that very sentence, and I cannot see that happen. I cannot. So I'm trying to reach out and hopefully there will be someone I may be able to talk to in this matter. And he goes on at other points throughout the call to say, I don't want to see this happening. I'm trying to stop it. That's why I'm calling. And so the problem is, even if it would be reasonable, even if a reasonable juror could have agreed with the government, they were never asked to make that determination because there was no instruction requiring willfulness, a bad purpose, an unlawful purpose. So it may well have been, perhaps the jury credited that, the government's argument, but perhaps they didn't. Perhaps they thought that Mr. Wallenstein, in fact, was calling for help. What do you think the bad purpose needed to be shown beyond the purpose of making a serious threat? Do you think there's some other purpose that the government had to show? Well, the language of the instructions was not simply, had the purpose of making a threat. Had the instruction said, with the purpose to threaten. Well, it said the defendant intended that the statement be understood as a threat.  Or to injure or kill another person, is how the court defined it. Yes. So it may well be, in fact, I would argue it's likely, that the jury believed Mr. Wallenstein intended for Ms. Boyles, for Agent Baumgarter, to believe he was seriously expressing these intents that he had in his head, these intentions of harming someone. But he wasn't doing that with a bad purpose. Well, but that was the jury, that the difficulty I'm having, this is a very close case. But the difficulty I'm having is that that was the jury's obligation to sort out. Because your client had the opportunity to present his theory of defense to the jury, and the jury nevertheless came back with a guilty verdict. And I'm curious as to what case are you relying upon in the context of making a threat that specifically requires the court to instruct on willfulness? What case are you relying upon in this context? Yes, Your Honor. Well, first, I'm more relying on the statute itself, which of course says that it needed to be knowing and willfully done. And then we have Bryan from the Supreme Court, which defines willfully as with a bad or unlawful purpose. Exactly. And we have the, let me just refresh my memory on the name of the case, Bagdasarian cites to it. It's the case that talks about, here, I'll get it, if I may have a moment. But we have cases that say, specifically, that the instruction must include. Yes, it's the Gordon. The Gordon. And then we have a case that says, in the context of a threat, a threat prosecution that the instructions must include the words willfully. Well, what we have, Your Honor, is the Gordon case, which also Bagdasarian cites to, which talks about the knowing and willfully element of the statute and says that there. But if that's couched in other words, but still conveys the same message, then you lose. Well, that's right, Your Honor. We're not saying it needed to have the term willfully, but there needed to be something in there about a bad or unlawful purpose. So the case is. No, Bagdasarian says, here's for 879, this is the only case that I saw cited that was the same statute, 18 U.S.C. section 879, says you need two elements. The first is that the statement would be understood by people hearing or reading it in context is a serious expression of an intent to kill, citing Gordon. And the second is that the defendant intended that the statement be understood as a threat, citing Gordon. So that's what our binding case law says needs to be told the jury, and that's exactly what the court said. Well, so this court's binding case law also says that just because, first of all, Bagdasarian, of course, is not an instructional error case. It's a sufficiency case. And I don't read the case, and I would suggest the court should not read that case as having purported to set out the language of proper instructions in any 879-83 case. Even though that's what it said. Well, I don't think it was talking about instructions. I mean, it clearly was not. It was talking about sufficiency. But I would encourage. But these are the two elements that must be met. Yes. I would encourage the court to review the long string cite of cases we have in our reply brief around page four or five. These are cases where this court has held over and over that even if language appears in a prior case, even if that case is purported to set out elements, instructional elements for the jury, that doesn't necessarily bind a later case if based on the actual facts of that later case, a jury would have been misled. And so that's where we get our instructions. We get our instructions from the cases, and if a case tells us these are the elements of the offense, that's what we put in the instructions as judges. Well, I'd respectfully disagree, Your Honor, if the facts of the case at hand don't neatly fit what those prior instructions talked about. And so this court's cases are very clear that if the jury is given no outlet for acquitting based on the defendant's theory of defense, which is precisely what happened here, the jury may well have believed he had no bad or unlawful purpose, but they were given no outlet for that finding. Your argument is that the court committed plain error by failing to sui sponte instruct on the theory of the defense. A couple of different arguments. We don't believe plain error applies, but even if it does, we do believe it was plain error. So let me tease those out. Certainly, as to sufficiency, first of all, we're on de novo review, and plain error doesn't apply. As to the theory of defense, the problem with the instructions really crystallized when in rebuttal closing, the government argued this point. His purpose didn't matter. It didn't matter if he was seeking help, at which point the defense objected and the court did nothing. So we believe that would be preserved. Additionally, problems with the instructions about omitting the willfulness element, that is a pure question of law that this court would review de novo. To answer the question more directly, though, even on plain error review, I would cite the court to the Bair case, which we have in our reply brief at page six. And in that case, this court squarely held that it was plain error for a court not to sui sponte instruct on a theory. We said there was a long history of that particular defense. Is there a long history of this defense? Well, there's a long history of willfulness being required for this defense because it's written in the statute. The public authority defense had a longstanding presence in our circuit, but the asking for help defense doesn't have a longstanding presence in our circuit, does it? Well, I wouldn't necessarily frame it as asking for help defense because, of course, this case is very sui generis. I mean, it is the rare defendant who, before acting on their intentions, calls law enforcement to say, please help me. I don't want to do this. So we have a very unique case. But there is a long history of willfulness being required. I mean, it's written into the statute. There's also a long history under Supreme Court case law of subjective intent to threaten being required. And those coincide here. The jury was instructed, as we've gone over, the intent that the statement be understood as a threat. And so what more do you think was necessary? It could have been as simple as a third element. Mr. Wallenstein made the statement with a bad or unlawful purpose. And what do you think that means? Because obviously making a threat and wanting it to be understood as a threat is what the statute prohibits. So that is the bad purpose. Well, if the instructions had stopped at instructions 13 or 14 and simply said threat, I would agree with Your Honor. The problem is the way threat was defined in this case is a serious expression of intent to harm, which it's perfectly reasonable for the jury to think Mr. Wallenstein had made, but not with any bad purpose, purely to explain his thoughts. I do want to save time for rebuttal. I'd like to just, if I may, point the court to a second problem with the instructions that I think is worth addressing. And that is because this court's case law is very clear that the other element, the objective element, is about a reasonable person. And here, and so the element should have been whether a reasonable person who heard the statement would have interpreted it as a threat. The instruction here, however, told the jury they could convict if Mr. Wallenstein made a statement that would be understood by people hearing it as a threat. But you didn't object to that. No, Your Honor. There was no- That directly tracks Bagdasarian. And again, Bagdasarian is- So how can it be plain error if there was no objection and it directly tracks our finding precedent? So in that same string site of cases, the court will see the $11,500 in U.S. currency case. And that's a case where the instructions tracked the statute verbatim. Verbatim. There was no objection. And nonetheless, this court found plain error. That's different, right? Because if there's a statutory language that has been authoritatively construed as saying something different, which we often do, then you have to have the different language that we have interpolated. But here, this is our construction of 879. I don't believe there's another one in the other languages or different statutes. Yes. And so if the court looks at Bagdasarian at the next page after the one the court was quoting earlier, it does mention the reasonable person standard over and over and over. And so again, those limited quotations from which the district court drew its instructions was not the full picture. There's no question under Kaiser and Bagdasarian that reasonable person is the standard. There was nothing in these instructions at all about whether the person had to be reasonable. And in fact, the instructions suggested it might have been the recipients. I do want to save some time for rebuttal if I may. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Bram Alden for the United States. The jury was correctly instructed using this court's controlling language and found defendant guilty. He asks this court now to sweep aside the jury's verdict, hook, line, and sinker, and engage in an appellate retrial. That is not how the process works. There was no prejudicial error here, and this court should therefore affirm. To address the instructional issues the defendant raises on appeal, I think the first point that is critical is one that the court has raised, which is that almost all of these claims are reviewed for plain error. The only objection that defendant made below was that the subjective intent element of the instruction didn't include the words in context. Of course, that is not what Bagdasarian has in the language. It has the words in context in the objective element, and defense counsel has not raised that argument here today. All of the other instructional errors the defendant is now claiming are therefore reviewed for plain error under Federal Rule of Criminal Procedure 30. The bad purpose or language or instruction the defendant is now requesting, which of course there was no such instruction proposed below, is, as Judge Ikuda has pointed out, exactly what a threat is. The point of the government's case was that you cannot obtain even a benign objective by seeking help or by looking for something that is right by making a threat. And the reason that is is because a threat was defined as a serious expression of an intent to kill or injure another person. So I think that's exactly the point, is that the bad purpose is encompassed within the idea that the defendant is making a threat. That's also consistent with the Supreme Court's decision in Alanis, where the Supreme Court pointed out that even if somebody thinks that a bank owes them money and they therefore have a rightful claim, they can't go rob the bank. It is the means by which you attempt to obtain your benign objective or your end that makes it criminal. And that is what happened here, and that is why the defendant was guilty. To address the reasonable person language that defense counsel is mentioning now, again, as Judge Ikuda pointed out, Bagdasarian is the case on 879, the statute at issue here. The only other case that the parties are relying on that decided an 879 conviction was Gordon. Neither of those cases endorsed or said that there needs to be the words reasonable person as opposed to just the word people. Indeed, Bagdasarian uses exactly the instruction that was given, and the parties argued that that was a reasonable person standard. That's at ER 424 and 437. Both parties used that language of the instruction to argue the reasonable person standard. The other instructional claims the defendant makes, there is no case that requires any separate willfulness instruction beyond what was given. In fact, the Bagdasarian language, as well as Gordon, says that because Congress construed knowingly and willfully in Section 879 as requiring proof of a subjective intent to make a threat, the jury must find that there was a subjective intent to make the threat. So the whole point of the statute is that because it uses the words knowingly and willfully, the subjective intent instruction must be given. That is what Bagdasarian and Gordon both say. That is what happened here. Counsel, could I move to a different topic? Could I ask you about the voir dire issue? Yes. What's your response to the contention by the defense that the district court conducted in inadequate voir dire regarding law enforcement personnel? So I would start with the proposition that this was something that the defendant either waived or is reviewable only for plain error. The defendant asked for one extra voir dire question that had nothing to do with law enforcement bias, and now tries to bootstrap his claim by saying that the government actually requested an instruction regarding law enforcement bias. That is not the way the process works. Defendant didn't join in the government's request for an instruction, and under the ANZ alone... Well, I thought there was an issue about the voir dire, whether or not people would give more weight to the testimony of a law enforcement officer. Wasn't that one of the issues? That's certainly an issue on appeal. It was never an issue below. But could you address that? Absolutely. Because it's my understanding that the court conducted all of the voir dire. Is that correct? Correct. But the court asked the parties, do they have additional voir dire questions that they would like the court to ask the jurors? And defendants, one additional question had nothing to do with this. Well, this kind of was a little bit troubling to me because the government knew that the bulk of the evidence that was going to be presented would be from law enforcement witnesses. And generally, that is a question that's asked. If the bulk of the testimony is coming from law enforcement witnesses, generally that question is asked of the jury pool, whether or not they would have a tendency to give more weight to testimony simply because it's coming from law enforcement. So I'm curious as to why that's not plain error to fail to ask about that. I would say that fairly construed, the district court did ask that question. She introduced these two witnesses, the only two witnesses, as law enforcement agents or, in the case of Ms. Boyles, a law enforcement employee. And then specifically asked jurors multiple times, do you understand that you cannot give anyone a leg up or an anchor down based on their profession? Those questions, when looked at in their context together, were exactly the kind of question that needed to be asked. It's pointed as the question is generally posed in that scenario. That's true, Your Honor. But I think that under plain error review, certainly, those kind of questions suffice to elicit that if anyone had any law enforcement. Counsel, didn't the district court also tell the jurors that the person's job doesn't affect their credibility and in that regard referenced police officers? Yes, Your Honor. And what then happened that also proves that there's no effect in substantial rights in this case is that any juror who even expressed any potential bias in favor of law enforcement witness was struck by agreement of the parties and defendant had multiple peremptory challenges that he never used. So had he wanted to strike any prospective juror who had even expressed any connection whatsoever to law enforcement, he could have done so. How would he know unless that specific question was asked and the answers were evaluated in the context of that pointed question? Well, what happened was when a prospective juror indicated any connection to law enforcement, even if a prospective juror had just been interviewed by law enforcement in the context of gaining a security clearance or some sort of TSA clearance, the court then asked that prospective juror, would that affect your ability to judge the evidence fairly? And so I do think the record illuminates that the defendant was able to judge whether any potential juror might have any bias, and then the defendant decided to stick with the jury as selected. Under those circumstances, I don't believe there was plain error. To address the sufficiency issue just briefly, I think that Judge Bennett hit the nail on the head, which is that this was a theory that the defendant presented to the jury, that this was a cry for help. And I think, Judge Rawlinson, you've illuminated that point too, was this was the defendant's theory to the jury at trial. The jury rejected that theory, and under this court's sufficiency review, there has to be at least some deference paid to the jury's verdict, or there would have been no point to going through the trial whatsoever. So under the sufficiency review, and given the statements that were very threatening and that the agents took seriously, and that even the district court ended up taking seriously, saying that she didn't want this defendant released even prior to the inauguration, this court should find that the evidence was sufficient to convict. I see I have additional time, but if the court has no further questions, I would submit. It appears not. Thank you, counsel. Rebuttal? Thank you, Your Honors. One point on the First Amendment issue, and then hopefully I can just touch on voir dire briefly. This court does not need to sweep aside some jury verdict here. The problem is the jury never rendered opinion on whether Mr. Wallenstein had a bad or unlawful purpose. Moreover, under this court's precedent, the court takes a de novo review of the constitutional question of whether there was a true threat, and does so, of course, keeping in mind that this is a statute that criminalizes pure speech. And the Supreme Court has said over and over that pure speech is constitutionally protected, except in very narrow, limited, well-defined circumstances. Counsel? Yes. No, I understand. I'm sorry to interrupt your rebuttal, but, I mean, he was asked the second time, will you do it, I don't know, a sniper rifle or a bomb? How is that protected by the First Amendment? Yes. So, Your Honor, that was made to Agent Baumgardner. That was the second time around. At that point, of course, Mr. Wallenstein had called an FBI tip line, a hotline that you call to report facts to try to stop crimes from happening, and had asked for help and was told, someone will contact you tomorrow. And he gets off the line thinking, great, help is being provided. That person comes and asks him questions. Mr. Wallenstein doesn't open the door and say, I'm threatening to do this, and this is how I'm going to do it. He says, great, you're here to help me, how can I answer your questions? And Agent Baumgardner asks him, tell me more, how are you planning to do this? And he says, I don't know, I'm not there yet. Maybe a sniper rifle or a bomb? I'm not sure. So I think this Court's cases are very clear. We have to look at the full context, the context of him calling a hotline where one tries to stop a crime from happening, the context of him asking for help. And keep doing that all with in mind the doctrine of constitutional avoidance and the fact that the First Amendment protects speech that has some value, societal value. And this is precisely what we'd want someone to do, call and ask for help in these circumstances. Does the Court wish me to address Vardir? I do see I'm over my time. Briefly. Thank you, Your Honor. I will be brief. First of all, this issue is preserved. An issue is preserved when it's brought to the trial court's attention. The government submitted the precise question we say should have been asked, and at the pre-trial hearing for Vardir, the defense said, we agree with the government's questions, we have one to add. So this is preserved. But even on plain error, this court said in Darbin, when important law enforcement testimony is expected, the court must inquire as to law enforcement bias. Here, the only testimony that was expected from the government was to law enforcement officers, yet not a single inquiry was made. And in the Contreras-Castro case that we cite, this court refutes the very argument the government's making here, that these general questions about bias are enough to address the law enforcement bias point. Does the court have further questions? The opposing counsel says that law enforcement was explored explicitly, and anyone who expressed a bias in terms of law enforcement was eliminated from the jury pool. What's your response? I would disagree with that characterization of the record. Law enforcement bias was addressed with one prospective juror only. That was juror number six. That was at 299 to 301. And that juror was not seated, but jurors one, three, four, and 12, and we go through this in the facts section of our brief, all had significant ties to law enforcement, family and law enforcement. Some volunteered themselves in law enforcement at the LAPDs or the sheriffs. One had interned for the DA's office. All of these people put forth those ties, and yet none of them was asked whether they would give greater deference to a member of law enforcement. The opposing counsel says that the defense could have struck them. Is that correct? Well, I agree with what Judge Rawlinson said, Your Honor. But is that correct? Were there peremptory challenges left over and they could have struck them? Did they have the ability to strike them? Yes. Did they have the information? No, because this question was not asked. But the evidence that they were connected with law enforcement was available. That evidence was available, yes, Your Honor. All right. Thank you, counsel. Thank you to both counsels. Thank you. I appreciate the extra time. Thank you. The case just argued is submitted for decision by the court.
judges: Rawlinson, Ikuta, Bennett